BEMENT *vs.* SMITH.

Where a carriage built by a mechanic, in pursuance of a contract, is *tendered* to the *customer*, and on his refusal to accept and pay for it, it is left in charge of a third person, of which the customer has notice, the mechanic, instead of selling it for what it may bring, and suing for the difference, may forthwith bring his action, declaring upon the contract, and averring a *delivery*, and is entitled to recover *the price agreed upon* between the parties at the time of the contract.

THIS was an action of *assumpsit*, tried at the Seneca circuit in November, 1834, before the Hon. DANIEL MOSELEY, one of the circuit judges.

In *March*, 1834, the defendant employed the plaintiff, a carriage maker, to build a *sulkey* for him, to be worth ten dollars more than a *sulkey* made for a Mr. Putnam ; for which he promised to pay $80, part in a note against one Joseph Bement, a brother of the plaintiff, for the sum of 10 or 11 dollars, and the residue in his own note, at 6 or 12 months, or in the notes of other persons as good as his own. In *June*, 1834, the plaintiff took the *sulkey* to the residence of the defendant, and told him that he delivered it to him, and demanded payment, in pursuance of the terms of the contract. The defendant denied having agreed to receive the carriage. Whereupon the plaintiff told him he would leave it with a Mr. De Wolf, residing in the neighborhood ; which he accordingly did, and in *July*, 1834, commenced this suit. It was proved that the value of the *sulkey* was $80, and that it was worth $10 more than Putnam's. The declaration contained three special counts, substantially alike, setting forth the contract, alleging performance on the part of the plaintiff, by a *delivery* of the sulkey, and stating a refusal to perform, on the part of the defendant. The declaration also contained a general count, for work and labor, and goods sold. The judge, after denying a motion for a nonsuit, made on the assumed grounds of variance between the declaration and proof, charged the jury, that the *tender* of the carriage was substantially a fulfilment of the contract on the part of the plaintiff, and that he was entitled

to sustain his action for the *price* agreed upon between the parties. The defendant's counsel requested the judge to charge the jury, that the measure of damages was not the value of the sulkey, but only the expense of taking it to the residence of the defendant, delay, loss of sale, &c. The judge declined so to charge, and reiterated the instruction, that the value of the article was the measure of damages. The jury found for the plaintiff, with $83,26 damages. The defendant moved for a new trial. The cause was submitted on written arguments.

*W. R. Smith*, for the defendant, insisted that the plaintiff ought to have been nonsuited, he having, in each of his special counts, alleged a *delivery* of the carriage, and the proof showing a mere *tender* and *refusal to accept*. It cannot be held that there has been a delivery, unless some act be shown on the part of the purchaser, recognizing the property as his, after it has existence. The plaintiff should have declared as for goods *bargained and sold*, framing his declaration specially on the contract, for not accepting or refusing to complete the bargain. 7 *T. R.* 67. *Peake's N. P.* 41. *Chitty on Contracts*, 124. 4 *Co.* 93. 4 *Esp. N. P.* 251. A delivery cannot be presumed, when the presumption is rebutted by positive proof. 2 *Kent's Comm.* 396. The plaintiff could not recover under the common count, the term of credit not having expired. 1 *Chitty's Pl.* 380. The judge erred in his instructions to the jury, as to the rule of damages. Here was not a complete bargain and sale. The property did not pass at the time of the contract, nor at the time of tender, as the defendant refused to accept. There was no change of property, and the plaintiff was therefore entitled to recover only *damages* for the breach of the contract, and not the *value* of the carriage. 2 *Kent's Comm.* 364. 1 *Chitty's Pl.* 170. 10 *Petersdorff's Abr.* 244. 15 *id.* 194. *Saund. on Pl. & Ev.* 874. 2 *Comyn on Cont.* 227.

*O. H. Platt & J. F. Stevens*, for plaintiff.

*By the Court,* Savage, Ch. J.   The defendant presents no defence upon the merits.   His defence is entirely technical, and raises two questions: 1. Whether the tender of the sulkey was equivalent to a delivery, and sustained the averment in the declaration that the sulkey was delivered; and 2. Whether the rule of damages should be the value of the sulkey, or the particular damages to be proved, resulting from the breach of the contract.   There is no question raised here upon the statute of frauds.   The contract is therefore admitted to be a valid one; and relating to something not *in solido* at the time of the contract, there is no question of its validity.

The plaintiff agreed to make and deliver the article in question at a particular time and place, and the defendant agreed to pay for it, on delivery, in a particular manner.   The plaintiff made, and, as far as was in his power, delivered the sulkey.   He offered it to the defendant at the place and within the time agreed upon.   It was not the plaintiff's fault that the delivery was not complete; that was the fault of the defendant.   There are many cases in which an offer to perform an executory contract is tantamount to a performance.   This I apprehend is one of them.   The case of *Towns* v. *Osborne, Strange,* 506, was like this.   The question here presented was not raised, but the defendant there sought to screen himself under the statute of frauds.   The defendant bespoke a chariot, and when it was made, refused to take it; so far the cases are parallel.   In an action for the value, it was objected that the contract was not binding, there being no note in writing nor earnest, nor delivery.   The objection was overruled.   In that case the action was brought *for the value;* not for damages for the breach of contract.   This case is like it in that particular; this action is brought *for the value,* that is, for the price agreed on—and it is shown that the sulkey was of that value.   The case of *Crookshank* v. *Burrell,* 18 *Johns. R.* 58, was an action in which the plaintiff declared against the defendant on a contract whereby the plaintiff was to make the wood-work of a wagon, for which the defendant was to pay in lambs.   The defendant was to come for the wagon.   The question was upon the statute of frauds.   Spencer, Ch. J. states what had been held in some of the English cases, 4

UTICA,
July, 1836.

Bement
v.
Smith.

*Burr.* 2101, *and* 7 *T. R.* 14, that a distinction existed between a contract to sell goods then in existence, and an agreement for a thing not yet made. The latter is not a contract for the sale and purchase of goods, but a contract for work and labor merely. The case of *Crookshank* v. *Burrell* is much like this, with this exception: there the purchaser was to send for the wagon; here the manufacturer was to take it to him. There it was held that the manufacturer was entitled to recover, on proving that he had made the wagon according to contract; here it is proved that the sulkey was made and taken to the place of delivery according to contract. The merits of the two cases are the same. It seems to be conceded that an averment of a tender of the sulkey by the plaintiff, and a refusal of the defendant to receive it, would have been sufficient; and if so, it seems rather technical to turn the plaintiff out of court, when he has proved all that would have been required of him to sustain his action. The plaintiff, in his special counts, does not declare for the sale and delivery, but upon the special contract; and herein this case is distinguishable from several cases cited on the part of the defendant, and shows that it was not necessary to have declared for goods *bargained and sold*. It seems to me, therefore, that the judge was right in refusing the nonsuit, and in holding that the evidence showed substantially a fulfilment of the contract. The variance as to the amount of Joseph Bement's note, I think, is immaterial; but if otherwise, it may be amended. The alleged variance as to the price of the sulkey is not sustained by the facts of the case.

The only remaining question, therefore, is as to the damages which the plaintiff was entitled to recover. It is true that the plaintiff does not recover directly as for goods sold; but in the case of *Towns* v. *Osborne*, the plaintiff recovered the value of the chariot, and in *Crookshank* v. *Burrell* the recovery was for the value of the wagon. The amount of damages which ought to be recovered was not the question before the court in either of those cases; but if the value of the article was not the true measure, we may infer that the point would have been raised. Upon principle, I may ask what should be the rule? A mechanic makes an article to order,

and the customer refuses to receive it, is it not right and just that the mechanic should be paid the price agreed upon, and the customer left to dispose of the article as he may ? A contrary rule might be found a great embarrassment to trade. The mechanic or merchant, upon a valid contract of sale, may, after refusal to receive, sell the article to another, and sue for the difference between the contract price and the actual sale. *Sands & Crump* v. *Taylor & Lovett,* 5 *Johns. R.* 395, 410, 411. 1 *Salkield,* 113. 6 *Modern,* 162. In the first of these cases, the plaintiffs sold the defendants a cargo of wheat. The defendants received part, but refused to receive the remainder. The plaintiffs tendered the remainder, and gave notice that unless it was received and paid for, it would be sold at auction, and the defendants held responsible for any deficiency in the amount of sales. It was held, upon this part of the case, that the subsequent sale of the residue was not a waiver of the contract, the vendor being at liberty to dispose of it *bona fide,* in consequence of the refusal of the purchaser to accept the wheat. This case shows that where there has been a valid contract of sale, the vendor is entitled to the full price, whether the vendee receive the goods or not. I cannot see why the same principle is not applicable in this case. Here was a valid contract to make and deliver the sulkey. The plaintiff performed the contract on his part. The defendant refused to receive the sulkey. The plaintiff might, upon notice, have sold the sulkey at auction, and if it sold for less than $80, the defendant must have paid the balance. The reason given by Kent, Ch. J. 5 *Johns. R.* 411, is, that it would be unreasonable to oblige him to let the article perish on his hands, and run the risk of the insolvency of the buyer. But if after tender or notice, whichever may be necessary, the vendor chooses to run that risk and permit the article to perish, or, as in this case, if he deposit it with a third person for the use of the vendee, he certainly must have a right to do so, and prosecute for the whole price. Suppose a tailor makes a garment, or a shoemaker a pair of shoes, to order, and performs his part of the contract—is he not entitled

UTICA,
July, 1836.

Rathbone
v.
Tucker.

to the price of the article furnished ? I think he is, and that the plaintiff in this case was entitled to his verdict.

The question upon the action being prematurely brought before the expiration of the credit which was to have been given, cannot properly arise in this case, as the plaintiff recovers upon the special contract, and not upon a count for goods sold and delivered.

New trial denied.