Orr *v.* Bigelow.

———◆———

## ORR and others *vs.* BIGELOW.

The plaintiffs agreed with the defendant that they would subscribe for, and become responsible to take fifty shares of the capital stock of the Troy and Boston Rail Road Company, of the estimated value of $5000, and to pay $500 upon the subscription. They further agreed, after having paid the $500, to assign and transfer to the defendant, by a proper instrument of conveyance, all the said stock, &c. The defendant, in consideration thereof, agreed that after the plaintiffs should have paid the sum of $500, and upon their executing and delivering to him " an assigment or transfer of all said stock," he would execute and deliver to them a covenant to pay the remainder of the amount which would be due upon the subscription, and indemnify the plaintiffs and save them harmless against all claims, &c. arising in consequence of their liability incurred by becoming stockholders in the said company. The plaintiffs, in pursuance of this agreement, executed and tendered to the defendant an assignment of 50 shares of the capital stock of the rail road com-

pany, which they had previously subscribed for, and on which they had paid $500, and also a power of attorney to transfer the stock on the books of the company. The by-laws of the company provided that no stock should be transferred on the books of the corporation until thirty per cent on each share had been paid in, unless by consent of the board of directors. The plaintiffs made application for such consent, and it was refused. The defendant declined accepting the assignment, on the ground that it was not a compliance with the terms of the agreement. The company sued the plaintiffs to recover the balance of their subscription, and obtained a judgment for $4690.85, which the plaintiffs paid. At the time the assignment of the stock was tendered, and at the time of the trial, the stock was worth from 40 to 43 cents on the dollar.

*Held* 1. That it was enough that the plaintiffs had executed an instrument which would transfer their interest in the stock to the defendant; it being no part of their agreement that they should procure a transfer of the stock upon the books of the company.

2. That the instrument executed by the plaintiffs would enable the defendant, if he desired it, to have the transfer made, upon the books of the corporation, upon complying with its by-laws. And that it was for him, and not the plaintiffs, to pay the residue of the 30 per cent required before a transfer upon the books could be obtained.

3. That having an instrument which would authorize him to procure such transfer to be made, upon making the requisite payment, it did not lie with the defendant to object that the transfer had not been actually made.

4. That the amount which the plaintiffs had been compelled to pay, upon the judgment against them, as the consequence of the defendant's breach of his agreement, was the proper measure of the plaintiffs' recovery for such breach.

APPEAL from a judgment rendered at the circuit. The action was tried at the Rensselaer circuit, in February, 1853, before Mr. Justice PARKER, without a jury. Upon the trial, the plaintiffs gave in evidence an agreement between them and the defendant, bearing date the 18th of May, 1849, whereby the plaintiffs agreed to subscribe for and become responsible to take, fifty shares of the capital stock of the Troy and Boston Rail Road Company, which would be of the estimated value of $5000, and for which they would, by their subscription, become responsible to pay that amount, and they agreed to pay $500 upon the subscription. They further agreed, after having paid the $500 upon their subscription, to assign and transfer to the defendant by a proper instrument of conveyance all the said stock, or the interest they should have acquired therein, and the defendant, in consideration thereof, agreed with

the plaintiffs, that he would, after they should have paid the sum of $500, and upon their executing and delivering to him an assignment or transfer of all said stock, execute and deliver, to the plaintiffs, a covenant to pay the remainder of the amount which would be due upon the subscription, as the same should become due and payable, and indemnify and save harmless the plaintiffs, of, from and against all claims and demands, actions and rights of action, arising from or made in consequence of their liability incurred by becoming stockholders in the said company.

The plaintiffs also proved that, on the 13th of August, 1850, they executed and tendered to the defendant an assigment of the fifty shares of the capital stock of the Troy and Boston Rail Road Company subscribed for by them in pursuance of the agreement of the 18th of May, 1849; subject to the calls thereon made and to be made, to the amount of $4500, and also a power of attorney to transfer the stock on the books of the company, pursuant to the by-laws of the company.  It also appeared that, by the by-laws of the company, it was declared that no stock should be transferable on the books of the corporation until thirty per cent on each share had been paid in, unless by consent of the board of directors; and that the plaintiffs had made application for such consent and it had been refused.  The defendant refused to accept the assignment when tendered to him, on the ground that it was not a compliance with the terms of the agreement.

The company, having sued the plaintiffs to recover the balance of the subscription, obtained a judgment against them, in June, 1851, for $4690.85, which judgment the plaintiffs paid. At the time the assignment of the stock was tendered by the plaintiffs to the defendant, and at the time of the trial, the stock was worth from 40 to 43 cents on the dollar.

The defendant insisted, upon the trial, 1. That the agreement of the 18th of May, 1849, contemplated, and that he had a right to exact, such a transfer of the stock as would invest the defendant with all the rights of the plaintiffs to control the stock and become a stockholder of the company; that the plain-

tiffs covenanted for such transfer, and the refusal of the directors to permit such transfer, was no excuse for the plaintiffs failing to perform their covenant; and that the assignment tendered did not invest the defendant with the rights of the plaintiffs as stockholders in the Troy and Boston Rail Road Company. 2. That if the plaintiffs were entitled to recover at all, they were entitled to recover only the difference between the amount paid by them, with interest, and the value of the stock. The court decided that the plaintiffs were entitled to recover the amount of the judgment recovered against them, and the interest thereon, and that upon being paid such amount they should transfer the stock to the defendant. Judgment was perfected upon this decision, on the 18th of October, 1853, for $5617.59, and the defendant appealed to the general term.

*D. Buel, jun.* for the plaintiffs.

*A. B. Olin,* for the defendant.

*By the Court,* HARRIS, J. The plaintiffs agreed to subscribe for the stock in question and pay ten per cent thereon, and then to *assign and transfer it to the defendant by a proper instrument of conveyance.* The instrument tendered to the defendant on the 13th of August, was, in the language of the contract, a proper instrument of conveyance. Its effect was, to " assign and transfer to the defendant all the interest which the plaintiffs had acquired in the stock by their subscription and the payment of $500." This was all they had stipulated to do. It was no part of their engagement that they should procure a tranfer of the stock upon the books of the company. It was enough that they had executed an instrument which would transfer their interest to the defendant. That instrument would enable the defendant, if he desired it, to have the transfer made upon the books of the corporation, upon complying with its by-laws. It was for him, and not the plaintiffs, to pay the residue of the 30 per cent required before a transfer upon the books could be obtained. Having an instrument

which would authorize him to procure such transfer to be made, upon making the requisite payment, it does not lie with him to object that the transfer had not been actually made.

I think, too, that the proper measure of damages was adopted at the circuit. The plaintiffs had subscribed for the stock under their agreement with the defendant. They had paid the ten per cent they had stipulated to pay, and had executed a sufficient assignment of the stock and tendered it to the defendant. The defendant had refused to accept the assignment, without sufficient cause. This tender and refusal must be regarded as equivalent to a performance, on the part of the plaintiffs, of their agreement to assign the stock. It then became the duty of the defendant, the plaintiffs having done all that was required of them, to pay the remaining ninety per cent upon the stock and to protect the plaintiffs against further liability. His omission to discharge this duty has subjected the plaintiffs to the payment of the judgment recovered against them for the balance of the subscription price of the stock. The amount which they have thus been compelled to pay, as the consequence of the defendant's breach of his agreement, constitutes the proper measure of the plaintiffs' recovery for such breach.

The situation of the defendant is not very unlike that of one who, having employed a mechanic to construct an article, afterwards refuses to accept it. The tender of the article and the refusal to accept, in reference to an action by the mechanic for the price of the article, are equivalent to a delivery, and the mechanic, though he still have the property in his hands, may recover of his employer the full price. (*Bement* v. *Smith*, 15 *Wend.* 493. *Sedg. on Dam.* 282.) The plaintiffs had by their subscription and the payment of $500, brought the stock into existence. They had done this, too, upon the employment of the defendant. The defendant was bound to accept it, when tendered, and to pay for it according to the terms of the contract. The proper assignment was tendered and refused. This furnished a sufficient foundation for an action to recover the contract price, which was ninety per cent, payable as the same should become due and payable to the company. The plaintiffs

were under no obligation either to sell the stock and credit the defendant with the proceeds, or to become the purchasers of it themselves. They held it for the defendant, and their only duty in respect to it was, to assign it to him upon request.

The provision in the judgment that upon the payment or collection of the amount recovered by the plaintiffs they should transfer the stock to the defendant, may be useless, but it is also harmless. It merely declares what would have been the duty of the plaintiffs without any such direction. At any rate, being a provision for the benefit of the defendant, it is not for him to complain. He is not obliged to enforce it. The judgment should therefore be affirmed.

[ALBANY GENERAL TERM, December 4, 1854. *Wright, Harris* and *Watson,* Justices.]