Gilmore, J.
The only question to be determined in this-case is: Did the court err in refusing to give to the jury the special instructions requested by the defendant on the trial below ? The authoxities cited by counsel for the paxties respectively, ax’e not in harmony with each other on this question. Some of those cited by the plaintiff in error (defendant below) show clearly that under the pleadings- and practice at common law, there could be no recovery u ader the common couxits in assumpsit, for goods sold and' delivered, or for goods bargained and sold, where no de *494 livery sufficient to pass the title from the vendor to the vendee had been made. And further, that in this form of action, proof of a tender of the goods by the vendor to the vendee, or leaving them with him against his remonstrance, would not constitute such a delivery as would pass the title and enable the vendor to recover. While these may be regarded as settling the rules of pleading and evidence on the trial of particular cases, and therefore not decisive of the question when raised under issues so formed as to present it freed from the technicalities of pleading, still there are other cases cited on the same side, which declare the rule to be as follows : Where an action is brought by the vendor against the vendee, for refusing to receive and pay for goods purchased, the measure of damages is the actual loss sustained by the vendor in consequence of the vendee refusing to take and pay for the goods, or, in other words, the difference between the contract price and the market price at the time and place of delivery. In the authorities cited by the plaintiff in error, no distinction is drawn, or attempted to be drawn, between the sale of goods and chattels already in existence, and an agreement to furnish materials and manufacture a specific article in a particular way, and according to order, which is not yet in existence ; the theory being, that in neither case would the title pass, ■or property vest in the purchaser, until there had been an actual delivery, and that until the title had passed, the vendor’s remedy was limited to the damages he had suffered by reason of the breach of the contract by the vendee, which were to be measured by the rule above stated. In this ease it is not necessary to determine whether or not a distinction, resting upon principles of law, can be drawn between ordinary sales of goods in existence and on the market, and goods made to order in a particular way, in pursuance of a contract between the vendor and vendee. The case here is of the latter kind, and the question is, whether the plaintiff below was entitled to recover the contract price of the carriage, on proving that he had furnished ■ *495 the materials, and made and tendered it in pursuance of the terms of the contract.
Counsel for the defendant in error (plaintiff below) has cited a number of authorities, in which the questions presented and decided arose upon facts similar to those in this case, and upon issues presenting the question in the same way; and as the conclusions we have arrived at, are based upon this class of authorities, some of them may be particularly noticed.
In Bement v. Smith, 15 Wend. 493, the defendant employed the plaintiff, a carriage-maker, to build a sulky for him, for which he promised to pay eighty dollars. The plaintiff made the sulky according to contract, and took it to the residence of the defendant, and told him he delivered it to him, and demanded payment, in pursuance of the terms of the contract. The defendant refused to receive it. Whereupon the plaintiff told him he would leave it with Mr. De Wolf, who lived near; which he did, and commenced suit. On the trial it was proved the sulky was worth eighty dollars, the contract price. The court charged the jury, that the tender of the carriage was substantially a fulfillment of the contract on the part of the plaintiff', and that he was entitled to sustain his action for the price agreed upon between the parties. The defendant’s counsel requested the court to charge the jury that the measure of • damages was not the sulky, but only the expense of taking it to the residence of the defendant, delay, loss of sale, etc. The judge declined to so charge, and reiterated the instruction that the value of the article was the measure of damages. The jury found for the plaintiff, with eighty-three dollars and twenty-six cents damages, being the contract price with interest. The charge to the jury was sustained by the Supreme Court of New York.
In Ballentine et al. v. Robinson et al., 46 Penn. St. 177, an agreement was made between the plaintiffs and defendants, whereby the plaintiffs were to provide materials, and •construct for the defendants a six-inch steam-engine, with holier and Gifford injector and heater, in consideration *496 whereof the defendants were to pay plaintiffs five hundred and thirty-five dollars in cash on the completion thereof-The plaintiffs complied with and completed the contract in all respects on their part, hut the defendants refused to pay according to contract. On the trial, the plaintiffs proved the contract, and the performance of it on their part, and that the engine was still in their hands.
The defendants’ counsel asked the court to instruct the-jury, “ that the proper measure of damages in this case is> the difference between the price contracted to be paid for the engine and the market price, at the time the contract was broken.” The court declined to charge as requested,, and instructed the jury that the measure of damages was-the contract price of the engine, with interest. There was-a verdict for the plaintiffs for the contract price. The ease-was taken to the Supreme Court, and the error assigned was the refusal of the court to give the instructions requested by the defendant. The Supreme Court affirmed the judgment in the case below. It will be seen that these cases are-very similar, and presented the same question, and in the-same manner that the question is presented in this case. Graham v. Jackson, 14 East, 498, decides the point in the-same way. Mr. Sedgwick, in his work on damages, side-page 280, in speaking on this subject, says: “Where a vendee is sued for non-performance of the contract on his-part, in not paying the contract price, if the goods have-been delivered, the measure of damages is of course the-price named in the agreement; but if their possession has-not been changed, it has been doubted whether the rule of damages is the pi-ice itself, -or only the difference between the contract price and the value of the ai'ticle at the time-fixed for its delivery. It seems to be well settled in such cases that the vendor can resell them, if he sees fit, and charge the vendee with the difference between the contract price and that realized at the sale. Though perhaps more-prudent, it is not - necessary that the sale should be at auction ; it is only requisite to show that the property was sold for a fair price. But if the vendor does not pursue- *497 this course, and, without reselling the goods, sues the vendee for his breach of contract, the question arises which we have already stated, whether the vendor can recover the contract price, or only the difference between that price and the value of the goods which remain in the vendor’s hands; and the rule appears to be that the vendor can recover the contract, price in full.”
In Hadly v. Gano et al., Wright, 554, the action was “ assumpsit on a written agreement between the parties, for the defendants to take all the salt the plaintiff manufactured between the 2d of June, 1831, and the 1st of January, 1832, to be delivered at the landing in Cincinnati, from time to time, as the navigation of the Muskingum and Ohio should permit, and to pay forty-five cents a bushel.” The plaintiff proved the agreement, and the offer to deliver to the defendants three hundred and fifty barrels of salt, which the defendants refused to receive. There was an issue in the-case, as to whether the contract had been previously fulfilled and abandoned by the parties. The court (Lane, J.) charged the jury that if the contract had not been “fulfilled or abandoned, and the plaintiff tendered the salt under the contract, which was refused, he had a right to leave it for the defendants and recover the value.”
The only case I have examined in which the authorities on this point are reviewed, is that of Gordon v. Norris, 49 N. H. 376. The case is too lengthy and complicated to attempt to give an abstract of it here, but the point under-consideration was involved; and although the learned judge criticises the law as laid down by Mr. Sedgwick, and even showsthat the authorities he quotes in support of his position do not sustain him, for the reason pointed out, yet he says that there is a distinction between the case of Bement v. Smith, and the ordinary cases of goods sold and delivered— viz., “ the distinction between a contract to sell goods then in existence, and an agreement to furnish materials and manufacture an article in a particular way and according to order, which is not yet in existence.” He recognizes Bement’s case *498 and others of the same class as exceptions to the general rule which is to be applied in the sale of ordinary goods and merchandise which have a fixed market value; and in the ¡syllabus of the case, the distinction is kept up and stated as follows:
“ Where the vendee refuses to receive and pay for ordinary goods, wares, and merchandise, which he has ■contracted to purchase, the measure of damages which the vendor is entitled to recover is not ordinarily the contract ■price for the goods, but the difference between the contract price and the market price or value of the same goods at the time when the contract was broken.
“ But when an artist prepares a statue or picture of a particular person to order, or a mechanic makes a specific artille in his line to order, and after a particular measure, pattern, or style, or for a particular use or purpose — when he has fully performed his part of the contract, and tendered ■or offered to deliver the article thus manufactured according to contract, and the vendee refuses to receive and pay for the same, he may recover as damages, in an action against ■the vendee for breach of the contract, the full contract price of the manufactured article.” .
As has been said, we are not called upon now to determine whether the distinction as drawn in the clauses quoted, is sound on principle or not; but be that as it may, we recognize the law applicable to the case before us as being correctly stated in the clahse last quoted.
Judge Swan, in his excellent “ Treatise” (10thed. 780),in ¡speaking of the effects of a tender upon the rights of the buyer and seller, and of the damages in such case, says: The general rule in relation to the rights of a seller, under ,a contract of sale, where he has tendered the property, and the buyer refuses to receive it, is this : The seller may leave the property at some secure place, at or near the place where the tender ought to be and is made, and recover the contract ■price; or he may keep it at the buyer’s risk, using reasonable ■diligence to preserve it, and recover the contract price and ■expenses of preserving and keeping it; or he may sell it, and *499 Recover from the buyer the difference between the contract price and the price at which it fairly sold.” The rule as thus laid down was first published in 1886, two years after the decision in Hadley’s case, above referred to, which was substantially followed by Judge Swan in laying it down. It does not appear that either the decision or the rule as laid down has ever before been questioned in Ohio. It will be perceived that Judge Swan lays down the rule generally ;as applicable to all sales of chattels in the ordinary course of trade, without intimating any such distinction as that drawn in Gordon v. Norris. We sanction and apply the rule in the determination of the particular case before us. When the plaintiff below had completed and tendered the carriage in strict performance of the contract on his part, if the defendant below had accepted it, as he agreed to do, there is no question but that he would have been liable to pay the full contract price for it, and he can not be permitted to place the plaintiff" in a worse condition by breaking than by performing the contract according to its terms on his part. When the plaintiff had completed and tendered the carriage in full performance of the contract on his part, and the defendant refused to accept it, he had the right to keep it at the defendant’s risk, using reasonable diligence to preserve it, and recover the contract price, with interest, .as damages for the breach of the contract by the defendant. Or, at his election, he could have sold the carriage for what it would have brought at a fair sale, and have recovered from the defendant the difference between the contract price and what it sold for.
The court below did not err in refusing to give to the jury the special instructions requested by the defendant below.

Motion overruled.

McIlvaine, O. J.,Welch, White, and Rex, JJ., concurred.