24945. MARSHALL *v.* MOULTRIE COTTON MILLS.

516

DECIDED DECEMBER 9, 1935.
ADHERED TO ON REHEARING FEBRUARY 1, 1936.

*Lee W. Branch,* for plaintiff. *J. O. Gibson,* for defendant.

JENKINS, P. J. This case arose from an action by a vendor against the vendee for $1080, as the "value and agreed purchase-price" of described cotton-mill looms and beams, orally ordered by the vendee for shipment by the vendor on an "order-notify" bill of lading with draft attached. The petition as amended alleged that the plaintiff so shipped the machines to the defendant, and sent the bill of lading with sight-draft attached to the Western Union Telegraph Company at the place of destination; that the defendant refused to pay the draft or receive the machines; that the plaintiff left them in the hands of the carrier, which sold them for freight and demurrage charges; and that the defendant is therefore liable for the value and agreed purchase-price of the machines, interest thereon from the date of shipment, and the freight and demurrage charges after crediting the proceeds from the carrier's sale. There was no averment that the plaintiff exercised the remedy of storing or retaining the property for the vendee under the Code of 1933, § 96-113. The court dismissed the action on the general grounds of demurrer which attacked the remedy seeking to recover the entire purchase-price, and the enforceability of the oral contract under the statute of frauds; and the special ground which attacked the claim of freight and demurrage charges.

1. While, in the absence of some agreement to the contrary, the delivery of goods to a common carrier ordinarily constitutes a delivery to the consignee, under the provisions of the Code of 1933, § 96-109, when a bill of lading is attached to a draft drawn on a third person it will be treated as security for the draft, and neither title to the goods nor right to the bill of lading will pass to the drawee until, as required therein, he accepts the goods and pays or secures the draft, as the case may be. *Boalmens Savings*

*Bank* v. *W. & A. R. Co.,* 81 *Ga.* 221, 223 (7 S. E. 125) ; *Erwin* v. *Harris,* 87 *Ga.* 333, 335 (13 S. E. 513) ; *Baer* v. *Hooks,* 40 *Ga. App.* 525 (149 S. E. 719) ; *Southern Ry. Co.* v. *Strozier,* 10 *Ga. App.* 157 (3) (73 S. E. 42) ; *Baker* v. *Central Grocery Co.,* 15 *Ga. App.* 377, 379 (83 S. E. 504) ; *Moss* v. *Sell,* 8 *Ga. App.* 588 (70 S. E. 18) ; 49 U. S. C. A., §§ 81, 83, 88, and cit.

2.   Before suit against a vendee for the purchase-price of goods shipped through a common carrier can be maintained by the vendor, title must have been relinquished by the vendor, and must have passed from the vendor to the vendee.  *Bridges* v. *McFarland,* 143 *Ga.* 581, 583 (85 S. E. 856) ; *Tuggle* v. *Green,* 21 *Ga. App.* 723 (94 S. E. 908).  In such a case, in the absence of a delivery (through the common carrier as the vendee's agent) the vendor could not abandon the goods to the carrier and sue for the purchase-price; but his remedy, in order to recover the purchase-price, would have required that he "store or retain the property for the vendee," in accordance with the provisions of the Code, § 96-113. *Oklahoma Vinegar Co.* v. *Carter,* 116 *Ga.* 140 (42 S. E. 378, 59 L. R. A. 122, 94 Am. St. R. 112) ; *Rounsaville* v. *Leonard Mfg. Co.,* 127 *Ga.* 735 (56 S. E. 1030) ; *Maddox* v. *Wagner,* 111 *Ga.* 146 (36 S. E. 609) ; *Farmers & Traders Bank* v. *Allen-Holmes Co.,* 122 *Ga.* 67 (49 S. E. 816) ; *Tuggle* v. *Green,* 150 *Ga.* 361, 366 (104 S. E. 85) ; *Dilman* v. *Patterson Produce Co.,* 2 *Ga. App.* 213, 215 (58 S. E. 365) ; *Linder* v. *Cole Lightning-Rod Co.,* 10 *Ga. App.* 102 (72 S. E. 719) ; *Dunaway* v. *Colt Co.,* 26 *Ga. App.* 554, 556 (106 S. E. 599).  Such compliance by the vendor with the requirements of the statute in legal contemplation would be the equivalent of delivery, even though the goods may have been shipped under an order-notify bill of lading with draft attached. *Mendel* v. *Miller,* 126 *Ga.* 834, 837 (56 S. E. 88, 7 L. R. A. (N. S.) 84).

3.   Accordingly, in the instant case, the consignor was not entitled to maintain a suit for the contract price of the goods, where the petition showed that the shipment was made through a carrier undesignated by the defendant consignee, upon an order-notify bill of lading with draft attached, transmitted to a third person at the place of destination, and that the defendant refused to pay the draft and receive the goods; and where the petition failed to allege that the plaintiff stored or retained the property for the defendant,

but in effect negatived such a procedure by alleging that the plaintiff had abandoned the goods to the carrier, which sold them for freight and demurrage charges. The case of *Castlen* v. *Marshburn*, 8 *Ga. App.* 400 (3) 406 (69 S. E. 317), strongly relied on by the plaintiff is in some respects distinguishable from the instant case, in that (1) the contract there was for the delivery of the goods to a carrier designated by the vendee as his agent (see, in this connection, the reference to the *Castlen* case in *Marks* v. *Talmadge's Sons Co.*, 8 *Ga. App.* 557, 560, 69 S. E. 1131) ; (2) the goods not only were delivered to such a designated carrier, but were addressed to the vendee, and some of them had been actually delivered to him; and (3) it appears to have been the opinion of the court that the action taken by the vendor amounted in effect to a compliance with the remedy provided for storing or retaining the goods for the vendee and suing for the entire price, under the provisions of the Code of 1895 (Code of 1933, § 96-113). However, since there is language in the *Castlen* case conflicting with the rulings here made, it must yield to the decisions of the Supreme Court and of this court, above cited.

## ON REHEARING.

When the decision in this case was originally rendered, it was stated that since the general demurrer had been properly sustained, under the rulings made in the preceding divisions of the opinion, the question whether the oral contract would or would not be valid under the statute of frauds, under some new and different form of procedure which might hereafter be adopted, was not for the court to determine on the present pleadings. However, on the grant of a rehearing, in order more thoroughly to consider the rulings as originally made, the case has been reconsidered in its entirety. In adhering to our former rulings, we have reached the further conclusion that since the judgment of the trial court was based upon both grounds of the defendant's demurrer, one of which expressly raised the question as to the statute of frauds, both questions should be adjudicated by this court. Under the statute of frauds (Code of 1933, § 20-401, par. 7), any contract for the sale of goods, wares, and merchandise to the amount of $50 or more, unless the buyer shall accept part of the goods sold and actually receive the same, or give something in earnest to bind the bargain, or in part payment thereof, in order to be binding, must be in writing. The

alleged contract of sale, forming the basis of the instant suit for the purchase-price of certain goods, not having been in writing, was invalid under the provisions of the statute of frauds. As was held by this court in *M. C. Kiser Co.* v. *Rosenbloom*, 41 *Ga. App.* 183 (152 S. E. 273) : "A delivery of goods to a common carrier will not, without more, constitute a delivery to the purchaser within the purview of that provision of the statute of frauds which refers to the sale of goods to the amount of more than $50, where the buyer has not accepted and actually received a part of the goods sold, or given something in earnest to bind the bargain or in part payment." In that case it was said by this court that regardless of any possible contrary ruling in *Casllen* v. *Marshburn*, supra, the doctrine announced in the *Kiser* case was in accordance with the decision of the Supreme Court in *Denmead* v. *Glass*, 30 *Ga.* 637 (2). See also *Baer* v. *Hooks*, 40 *Ga. App.* 425 (supra). In other words, a delivery to a common carrier for even unconditional delivery to a consignee can not, at one and the same time, both create a valid contract and operate as a delivery thereunder. If a contract conforming to the statute of frauds already existed, unconditional delivery to the carrier would amount to delivery to the consignee; but in the absence of such a valid agreement, even an unconditional delivery to the carrier for delivery to the consignee amounts to nothing more than a tender.

*Judgment affirmed. Stephens and Sutton, JJ., concur.*
*Stephens, J.,* concurring specially. On rehearing I withdraw my dissent from the judgment of affirmance, and now concur in the judgment on the ground that it appears from the petition as amended that the contract was unenforceable by reason of the statute of frauds, and that the demurrer was properly sustained.